UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

TINA JENKINS,

    Plaintiff,

v.

MV TRANSPORTATION, INC.,

    Defendant.

Civil Action No. TDC-14-0702

**MEMORANDUM OPINION**

Plaintiff Tina Jenkins, who is self-represented, has brought this action against her former employer, MV Transportation, Inc. ("MV"), alleging that she was subjected to discrimination on the basis of sex and unlawful retaliation for engaging in a protected activity, both in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (2012). Pending before the Court is MV's Motion for Summary Judgment. Having reviewed the pleadings and briefs, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED.

**BACKGROUND**

MV is a transportation company that has a contract with the Washington Metropolitan Area Transit Authority ("WMATA") to provide paratransit services through WMATA's MetroAccess program. MV hired Jenkins around March 12, 2009 to work as a driver of passenger vans.

In late January 2010, MV Assistant Operations Manager Vincent Jacque alerted Jenkins's supervisor, General Manager Christopher York, that Jenkins had begun to act peculiarly and that

there were safety concerns about continuing to allow her to drive an MV passenger van. York met with Jenkins that day and also noted her uncharacteristic behavior. She was speaking in a low voice, kept looking around as if she were nervous, and refused to take her sunglasses off, even while inside. When asked what was wrong, Jenkins told York that a male co-worker had inappropriately touched her on several occasions, that another male co-worker had obtained naked pictures of her, that those pictures were being passed around the office, and that dispatchers had told her that they were masturbating to those photographs. York asked if she had any proof of these events, and Jenkins replied that she did not.

York asked Jenkins to meet with Human Resources to discuss these allegations further. In the meantime, however, her strange behavior continued to concern him, and he feared for her safety as well as for the safety of passengers should she drive an MV vehicle. He therefore ordered that Jenkins not be assigned a driving route until he had approved her to drive again.

York and Jenkins met with Human Resources representative Sandra Welsh on February 3, 2010. At that meeting, Jenkins made additional allegations. She claimed that the call center dispatchers were listening to everything she said, whether she was at work or at home; she claimed that whenever she was speaking on the phone, no matter what phone she was using or with whom she was speaking, she heard the dispatchers shouting at her; and she claimed that managers and dispatchers were following her everywhere she went to record her behavior. Jenkins also asked York whether his office was fitted with listening devices because she feared that other employees were listening in on their conversation. At this point, York asked Jenkins to take a drug test.

The drug test came back negative, but York was still concerned that, should he allow Jenkins to drive a paratransit bus, she would be a danger to herself and to others. He therefore

asked Jenkins, with the assent of the drivers' union, to complete a fitness for duty examination before he would clear her to work. He also asked her to provide him with her current phone number, so that he could make arrangements for her to complete the examination and return to work. She refused to provide him with that information and instead stated that she would call him directly.

Over the next six weeks, Jenkins never reached out to York, leaving York with no sign that Jenkins intended to return to MV. During this time, MV's Human Resources Department investigated Jenkins's claims of sexual harassment but could not substantiate them.

On March 19, 2010, MV's personnel management system automatically terminated Jenkins's employment pursuant to a policy, designed to manage high turnover, under which MV terminates employees who fail to work any hours for two consecutive pay periods. This administrative termination was executed by personnel located in Fairfield, California who had no knowledge of Jenkins or of the claims she had made.

Less than two months later, in May 2010, Jenkins was diagnosed ▇▇▇▇▇▇. According to Jenkins, the symptoms that led to this diagnosis included ▇▇▇▇▇▇ ▇▇▇▇▇▇ Jenkins Dep. at 197, Mem. Mot. Summ. J. Ex. B, ECF No. 103-3. She has been hospitalized for ▇▇▇▇ "three or four" times, and she did not search for another job after her employment with MV ended because ▇▇▇▇▇▇ Jenkins Dep. at 197, 210, ECF No. 103-3. Jenkins believes that her condition was caused by the MV employees who listened in on her phone calls, shouted at her during those phone calls with other people, and followed her wherever she went.



After filing a charge of discrimination with the United States Equal Employment Opportunity Commission and receiving the agency's determination, Jenkins filed her Complaint. Following the completion of discovery, MV filed the pending Motion for Summary Judgment.

**DISCUSSION**

MV seeks summary judgment on all claims, arguing that Jenkins cannot establish a *prima facie* case of sex discrimination or retaliation and that, even if she were able to do so, MV has articulated a legitimate non-discriminatory reason for her termination that Jenkins has not demonstrated to be pretextual.

**I.	Legal Standard**

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49. Although *pro se* litigants are given some latitude, this standard applies equally to them. Self-represented litigants "may not avoid summary judgment by relying on bald assertions and speculative arguments." *Smith v. Vilsack*, 832 F. Supp. 2d 573, 580 (D. Md. 2011).

In her opposition memorandum, Jenkins has argued that summary judgment is inappropriate because MV failed to obtain all of her medical records, and because she "is willing to get a second expert opinion" to counter Dr. Gold's expert report. Mem. Opp'n Summ. J. at 5, ECF No. 106. Discovery, however, began in February 2015 and ended in August 2017. During that period of well over two years, Jenkins has had ample opportunity to obtain all of the documents and reports necessary to defend against MV's motion. Jenkins has also failed to articulate how this additional information is essential to her defense. *See Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995). The Court will therefore consider the Motion and the attached exhibits.

## II.     Sex Discrimination

Jenkins alleges that MV fired her because of sex discrimination. In support of her claim, Jenkins points to her negative drug test results as proof that MV's actual motivation for terminating her was discriminatory animus.

To preclude summary judgment on a Title VII disparate treatment claim, a plaintiff must establish intentional discrimination through one of two methods. The plaintiff may either demonstrate through direct or circumstantial evidence that sex discrimination "motivated the employer's adverse employment decision," *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nasser*, 570 U.S. 338 (2013), or proceed through the approach espoused in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under that framework, "the plaintiff has the burden to establish a prima facie case" of discrimination. *Lettieri v. Equant, Inc.*, 478 F.3d 640, 646 (4th Cir. 2007). If the plaintiff does so, "the burden shifts to the employer at the second step 'to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Id.* at 646 (quoting *Hill*, 354 F.3d at 285). Upon such a showing, the burden then returns to the plaintiff at the third step to show, by a preponderance of the evidence, that the proffered nondiscriminatory reason "is actually a pretext for discrimination." *Id*.

Here, Jenkins has elected to use the *McDonnell Douglas* framework. To establish a *prima facie* case of sex discrimination in a termination, a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Hill*, 354 F.3d at 285. The fourth element,

however, need not be established in cases where the "firing and replacement hiring decisions were made by different decisionmakers," or where "the defendant hires someone from within the plaintiff's protected class in order 'to disguise its act of discrimination toward the plaintiff.'" *Miles v. Dell, Inc.*, 429 F.3d 480, 485, 488 (4th Cir. 2005) (quoting *Brown v. McLean*, 159 F.3d 898, 905 (4th Cir. 1998)).

Jenkins argues that she has established a *prima facie* case of sex discrimination because she is a woman, she was fired, her drug test was negative, and she received a rating of 94 out of 100 for her job performance. However, she has provided no evidence to establish this performance rating or the date of that rating. She has provided neither allegations nor evidence regarding the fourth element.

Although Jenkins has satisfied the first two elements of a *prima facie* case by establishing that she is a woman who was terminated from her job, she failed to present sufficient evidence to satisfy the third or fourth elements. A negative drug test, standing alone, is insufficient to show that she was adequately performing her job, and she has provided nothing but an assertion in her Complaint to show that she was given a favorable performance review at some point during her time with MV. *Bouchat*, 346 F.3d at 522 (stating that parties opposing summary judgment may not rely only on their pleadings and must provide specific facts). Moreover, she has entirely failed to address the fourth element, either to establish that she was replaced by a man or to show that it is unnecessary to address that element in this case.

Even if Jenkins had established a *prima facie* case of discrimination, MV has carried its burden to demonstrate that it had a legitimate, nondiscriminatory reason for ending her employment. Jenkins claims that she was the victim of sex discrimination because she was terminated after complaining of sexual harassment. However, an investigation of these

7

allegations by MV's Human Resources Department found no evidence to substantiate these claims. More importantly, according to the affidavit of her supervisor, Christopher York, the path toward termination began when he observed strange behavior from Jenkins that caused him to fear for her safety as well as for the safety of the public, including passengers of her paratransit van. This behavior included speaking in low tones, looking around nervously, claiming that MV call dispatchers were listening to all of her conversations, including her private phone conversations, and asserting that MV personnel were conducting surveillance of her off-duty movements. That his concerns were reasonable was borne out by her subsequent ▌▌▌▌▌, which demonstrated that she was suffering from an ▌▌▌▌▌ in the period before her termination. ▌▌▌▌▌. Jenkins Dep. at 210, Mot. Summ. J. Ex. B, ECF No. 103-3. York therefore asked Jenkins to take a drug test and a fitness-for-duty examination and refused to assign her a route until that examination was completed. Jenkins did not follow up with him to schedule that exam and did not provide York with a phone number by which he could reach her. From York's perspective, she had abandoned her job. Nevertheless, neither York nor anyone else at MV who had learned of her sexual harassment allegations made the decision to terminate her employment. The decision to terminate Jenkins was made automatically by MV's personnel management system, pursuant to MV's policy to terminate any employee who failed to report to work for two pay periods. Such a policy was put in place in part because of the high turnover among MV drivers and past failures by supervisors to document the departure of drivers. This evidence is sufficient to carry MV's burden to show a legitimate, non-discriminatory reason for terminating her employment.

In light of this evidence, Jenkins must be able to show, by a preponderance of the evidence, that MV's purported reason for terminating Jenkins was pretextual, and that MV actually fired her because she is a woman. In her briefing, Jenkins has failed even to address MV's proffered reasons for her termination. She has offered no evidence to create a genuine issue of material fact on whether MV's concerns about her ability to perform her job safely were legitimate.

Although she claims that her ▇▇▇▇▇▇ issues were caused by harassment by MV employees, MV has provided unrebutted expert testimony that Jenkins's condition could not have been triggered by such actions. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Furthermore, Jenkins has provided no evidence to refute MV's evidence that she never sought to complete the fitness-for-duty exam, or that it terminated her pursuant to its policy of automatically terminating employees who have not reported to work. Because Jenkins has not provided evidence to create a genuine issue of material fact on whether MV's asserted nondiscriminatory reason for termination was pretextual, the Motion will be granted as to Jenkins's sex discrimination claim.

## III. Retaliation

Jenkins also alleges that MV fired her in retaliation for reporting alleged sexual harassment by co-workers. In support, she argues that immediately after she told her supervisor

about such harassment, she was asked to take a drug test and then, even after she passed the drug test, she was fired.

Title VII prohibits retaliation against an employee because the employee has "opposed" an "unlawful employment practice." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation under Title VII, the plaintiff must make a showing that (1) the plaintiff engaged in protected, oppositional activity; (2) the employer took an adverse employment action against the plaintiff; and (3) there was a causal connection between the two events. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). The burden then shifts to the employer to identify a legitimate, non-retaliatory reason for taking the adverse employment action. *Id.* If the employer does so, "the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported non-retaliatory reasons were not its true reasons, but were a pretext for discrimination." *Id*. If a plaintiff can show termination "under suspicious circumstances" and that the "employer lied about its reasons for firing" the plaintiff, "the factfinder may infer that the employer's undisclosed retaliatory animus was the actual cause of [the] termination." *Id.*

Jenkins argues that reporting sexual harassment by co-workers to York and then later to a Human Resources representative satisfies the first element, engaging in protected, oppositional activity. Courts take an "expansive view of what constitutes oppositional conduct." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). It "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). To qualify as protected activity, the employment practices opposed may be either "actually unlawful under Title VII" or reasonably believed by

the employee to be unlawful. *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397 (4th Cir. 2005)). By notifying York and Human Resources that she believed that she had experienced sexual harassment, Jenkins satisfied these requirements.

Jenkins also has satisfied the third element by showing causation between her protected action and her termination. Close temporal proximity between the protected activity and the adverse employment action "may suffice to demonstrate causation." *Waag v. Sotera Defense Solutions, Inc.*, 857 F.3d 179, 192 (4th Cir. 2017). When there is a more significant temporal gap, courts need to "look to the intervening period for other evidence of retaliatory animus." *Lettieri.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). Here, Jenkins lost her driving route almost immediately after she reported the sexual harassment to York. Following her second meeting with York, which also included a Human Resources representative, she was asked to take a drug test. Despite passing that test, she was still told that she was not allowed to work, a status that lasted until her administrative termination. The temporal proximity between her reports of sexual harassment, the loss of her driving route, and her ultimate termination is sufficiently close to satisfy the causation element. Jenkins has therefore established a *prima facie* case of retaliation.

The burden then moves to MV to show that it had a legitimate, non-retaliatory reason for terminating her employment. As discussed above, MV satisfied this requirement by providing her supervisor's affidavit, which described his concern that based on her peculiar behavior, allowing her to drive a paratransit bus would put both her and the public in danger. This account is corroborated by Jenkins's acknowledgment of her condition, and by Dr. Gold's evaluation substantiating MV's concerns and concluding that her condition was not caused by any sexual

11

harassment. MV also presented evidence that based on these concerns, it required Jenkins to take a fitness-for-duty examination, and that when she failed to contact York or return to MV to take the examination, she was automatically terminated, pursuant to MV policy, for failure to report to work. MV further provided evidence that the termination decision was made pursuant to that policy by personnel unaware of her sexual harassment allegations. Where Jenkins has offered no evidence to refute MV's account, or to show that MV's decisions were motivated by a desire to punish Jenkins for alleging sexual harassment, Jenkins has failed to establish a genuine issue of material fact on whether MV's stated reason for termination was a pretext for retaliation. MV's motion for summary judgment on Jenkins's retaliation claim will therefore be granted.

## CONCLUSION

For the foregoing reasons, MV's Motion for Summary Judgment is GRANTED. A separate Order shall issue.

Date: January 25, 2018

THEODORE D. CHUANG
United States District Judge